IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LENNIE LANELL MOORE,
                    Plaintiff,

v.                                        CIVIL NO. 3:14-CV-2073-L-BK

CAROLYN COLVIN,
Acting Commissioner of the Social
Security Administration,
                    Defendant.

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

This case has been referred to the undersigned for Findings, Conclusions, and

Recommendation on the parties' cross motions for summary judgment.  For the reasons that

follow, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 14, be **DENIED**,

Defendant's *Motion for Summary Judgment*, Doc. 18, be **GRANTED**, and the Commissioner's

decision be **AFFIRMED**.

## I.  BACKGROUND

**A.     Procedural History**

Plaintiff filed an application for disability insurance benefits (DIB) in October 2011,

alleging a disability onset date of January 1, 2003, due to arthritis, chronic obstructive pulmonary

disease (COPD), asthma, bronchitis, diabetes, neuropathy, and high blood pressure.  Doc. 12-3 at

14; Doc. 12-6 at 2-8; Doc. 12-7 at 12.[1]  Her last insured date for purposes of DIB is September

30, 2005.  Her applications were denied at all administrative levels, and she now appeals to the

United States District Court pursuant to 42 U.S.C. § 405(g).  Doc. 12-3 at 3-7; Doc. 12-3 at 14-

19; Doc. 12-5 at 6-11; Doc. 12-5 at 15-20.

---

[1]  The following background comes from the transcript of the administrative proceedings, which
can be found at Doc. 12.

B.      <u>Facts</u>

Plaintiff was 51 years old on her alleged disability onset date, and she had a high school education and past relevant work experience in telemarketing sales.  <u>Doc. 12-3 at 33</u>; <u>Doc. 12-7 at 5</u>.  During the relevant period, from her alleged onset date until the date last insured, Plaintiff sought treatment for a variety of ailments.  In April 2003, she went to the emergency room, complaining of a warm sensation that came on at no specific time, lasted for 15 minutes, and was associated with nausea, weakness, and vomiting.  <u>Doc. 12-8 at 5</u>.  Plaintiff advised that she had last been seen by a doctor the previous year.  <u>Doc. 12-8 at 5</u>.  Doctors advised Plaintiff that she was experiencing menopausal symptoms, but Plaintiff, who was then 51, argued to them that she was pregnant.  <u>Doc. 12-8 at 6</u>.  The same month, Plaintiff complained of weakness for the past several days, nausea, and vomiting and stated that her ankles were swollen and her toenails had turned purple.  <u>Doc. 12-8 at 8-10</u>.  It was noted that Plaintiff's toenails were pink and she had trace edema in her feet and ankles.  <u>Doc. 12-8 at 10</u>.  In September 2005, Plaintiff went to the emergency room, complaining of moderate dysuria (difficulty or pain when urinating) and pelvic pain.[2]  <u>Doc. 12-8 at 23</u>, 26.  Plaintiff, who was at that time 54 years old, again stated that she was pregnant despite a urine test coming back negative.  <u>Doc. 12-8 at 31</u>.  Eventually, she left the hospital against medical advice because of the length of the wait.  <u>Doc. 12-8 at 26</u>, 30.

C.      <u>Administrative Hearing</u>

At an administrative hearing held in June 2013, Plaintiff testified that as of her disability onset date in January 2003, she was experiencing pain from arthritis so severe that she could hardly get out of bed, and she had COPD and uncontrolled diabetes which kept her from working.  <u>Doc. 12-3 at 33-34</u>.  Plaintiff's counsel noted that Plaintiff had begun receiving

---

[2] **Error! Main Document Only.**Medical terms are defined by reference to *Stedman's Medical Dictionary* (27th ed 2000), which is available on Westlaw.

supplemental security income ("SSI") benefits approximately three years prior to the hearing. Doc. 12-3 at 29.  Because there was such limited medical documentation in the record, the ALJ and Plaintiff's counsel agreed to adjourn the hearing so that Plaintiff could present additional medical records and then counsel would advise the ALJ whether Plaintiff wanted a supplemental hearing.  Doc. 12-3 at 36.37.  Following the hearing, Plaintiff submitted substantial additional records, but none of them related to the relevant time frame from January 2003 through September 2005.  Doc. 12-12 at 1-81; Doc. 15 at 2 (Plaintiff's summary judgment brief noting submission of Exhibits C23F-C25F to ALJ).

**D.     The ALJ's Findings**

At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of January 1, 2003 through her date last insured of September 30, 2005.  Doc. 12-3 at 16.  Next, the ALJ found that, through the date last insured, Plaintiff had the following medically determinable impairments:  arthritis, COPD, asthma, bronchitis, diabetes mellitus with neuropathy, and hypertension.  Doc. 12-3 at 16.  The ALJ found, however, that Plaintiff did not have an impairment or combination thereof that significantly limited her ability to perform basic work-related activities for 12 consecutive months and thus had no severe impairments.  Doc. 12-3 at 16.  The ALJ therefore concluded that Plaintiff was not disabled during the relevant time frame.  Doc. 12-3 at 19.

**E.     The Appeals Council**

Plaintiff thereafter submitted to the Appeals Council additional medical records, many of which covered the relevant time frame from January 2003 through September 2005.  Doc. 12-13 at 4-Doc. 12-16 at 6.  The relevant records indicate that Plaintiff presented to the emergency room in March 2004 with abdominal pain and nausea.  Doc. 12-13 at 14-15.  She had normal

range of motion in her extremities and no pedal edema and reported that she took no medications. Doc. 12-13 at 15, 18. Plaintiff was diagnosed with gastritis, given a "GI cocktail" and reported that she was feeling "much better" and had no pain shortly thereafter. Doc. 12-13 at 16, 18. It was noted that she should repeat a blood sugar test because her blood sugar level was slightly elevated. Doc. 12-3 at 19, 21. Plaintiff again went to the emergency room in April 2003 complaining of a swollen stomach and the frequent, urgent need to urinate. Doc. 12-13 at 8. On examination, the doctor's clinical impression was that Plaintiff had labial inflammation, dysuria, and cystocele (hernia of the bladder, usually into the vagina and introitus). Doc. 12-13 at 11. Her blood glucose test was normal. Doc. 12-13 at 12. In May 2004, Plaintiff went to the emergency room with complaints of dizziness and swelling feet and hands. Doc. 12-14 at 25. Her blood work was normal and a pregnancy test was negative although Plaintiff stated that she was pregnant. Doc. 12-14 at 4-5. She had normal range of motion in her extremities and no edema. Doc. 12-14 at 4. Plaintiff stated that the only medication she was on was Maalox. Doc. 12-14 at 16.

A July 2004 pelvic sonogram indicated that Plaintiff had undergone a hysterectomy, however the report writer noted that the referral stated "pregnancy." Doc. 12-14 at 19. In August 2004, Plaintiff had a five-view cervical spine imaging series due to neck pain. Doc. 12-4 at 9. The imaging revealed that there was no collapse, compression, fracture or acute injury to the cervical spine, and there were hypertrophic spurs encroaching the neural foramina on the left side to a mild degree at C5-6 and on the right side at C3-4 and C5-6. Doc. 12-14 at 9. Imaging of Plaintiff's hands taken due to her complaints of pain revealed no visible problems in the right hand. Doc. 12-14 at 10. In the left hand, the imaging revealed degenerative changes throughout the joint spaces without evidence of fracture or acute injury. Doc. 12-14 at 11.

Plaintiff also submitted to the Appeals Council a letter from the Social Security Administration dated September 13, 2004, which stated in reference to SSI benefits, that Plaintiff was "entitled to monthly payments as a disabled individual." Doc. 12-16 at 7. The Appeals Council denied Plaintiff's request for review, noting that it had considered the additional records she submitted, but the information did not provide a basis for changing the ALJ's decision. Doc. 12-3 at 2-3, 6.

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). In order to qualify for a period of disability and DIB, a claimant must prove that his disability began on or before the date his insured status expired. *See* 42 U.S.C. §§ 423(a), (c); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); 20 C.F.R. § 404.131.

The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled:  (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity (RFC) must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant.

*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The analysis terminates if the

Commissioner determines at any point during the first four steps that the claimant is disabled or

is not disabled.  *Id.*  If the claimant satisfies his burden under the first four steps, the burden

shifts to the Commissioner at step five to show that there is other gainful employment available

in the national economy that the claimant can perform.  *Greenspan v. Shalala*, 38 F.3d 232, 236

(5th Cir. 1994).  This burden may be satisfied either by reference to the Medical-Vocational

Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga*

*v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the

Commissioner's position is supported by substantial evidence and whether the Commissioner

applied proper legal standards in evaluating the evidence.  *Greenspan*, 38 F.3d at 236; 42 U.S.C.

§§ 405(g), 1383(C)(3).  Substantial evidence is more than a scintilla, less than a preponderance,

and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to

support a conclusion.  *Leggett*, 67 F.3d at 564.  Under this standard, the reviewing court does not

reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the

record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.

## III.   ARGUMENT AND ANALYSIS

**A.  Whether the letter from the Commissioner stating that Plaintiff was disabled in September 2004 commits the Commissioner to a finding that Plaintiff was disabled from that point.**

Plaintiff asserts that the September 2004 letter from the Social Security Administration to

her stating that she was entitled to SSI payments due to her disability is evidence that the

Commissioner determined that Plaintiff was disabled during the relevant time frame.  Doc. 15 at

5.  Accordingly, Plaintiff argues that the Commissioner should be barred by the doctrine of administrative res judicata from asserting otherwise.  Doc. 15 at 5 (citing 20 C.F.R. § 404.957(c)(1)).

Defendant responds that while Plaintiff was receiving SSI payments at the time of the administrative hearing in June 2013, she indicated that she had only begun to receive those payments three years earlier.  Doc. 19 at 9.  Moreover, Plaintiff previously had been found not disabled when she filed for DIB alleging an onset date of January 2003.  Doc. 19 at 9 (citing Doc. 12-6 at 10).  Finally, Defendant observes that Plaintiff did not introduce any evidence that she ever actually received SSI payments in 2004, nor did the letter in question identify any amount that she would receive.  Doc. 19 at 9-10.

As an initial matter, res judicata applies in the administrative context only when there is a final decision by the Commissioner, and there is no suggestion on this record that the letter at issue was such a "final decision" within the meaning of section 404.957(c)(1).  Indeed, Plaintiff's attorney stated at the administrative hearing that Plaintiff did not actually begin receiving SSI benefits until approximately 2010, six years later than the date noted in the letter. Additionally, even if the Appeals Council did err in not finding that the letter constituted a finding of disability under the doctrine of res judicata, that decision would not be reviewable by this Court because Plaintiff has not raised a colorable constitutional claim.  *Brandyburg v. Sullivan*, 959 F.2d 555, 561-62 (5th Cir. 1992) (holding that a res judicata determination of a Social Security claimant's claim is unreviewable in federal court unless the claimant raises a colorable constitutional claim).  Accordingly, Defendant is entitled to summary judgment on this ground.

**B.  Whether the Commissioner erred in not explaining her rejection of the treating sources' opinions that were submitted after the administrative hearing**

Plaintiff next argues that the ALJ erred in not (1) reconvening the administrative hearing to analyze whether the post-hearing medical records Plaintiff submitted showed that she could not return to her past work; and (2) not analyzing those records completely.  Doc. 15 at 6-7. Additionally, Plaintiff contends that the ALJ was required to give her treating sources' opinions controlling weight because the ALJ did not have the evidence examined by a medical source. Doc. 15 at 7.  Plaintiff concludes that, based on the medications she has taken, the bone spurs in her neck, and the slowly progressive nature of arthritis, which is the basis for her current disabled status, she has presented substantial evidence that she was disabled during the relevant time frame.  Doc. 15 at 7-8.

Defendant responds that the ALJ properly and fully considered Plaintiff's post-hearing submissions and correctly determined that she did not have a severe impairment.  Doc. 19 at 11-14.  Further, Defendant maintains that there was no need for the ALJ to choose between obtaining an opinion from a medical source and giving certain medical evidence controlling weight because the final responsibility for assessing a claimant's RFC and disability status is reserved to the Commissioner.  Doc. 19 at 14-15.  Finally, Defendant contends that Plaintiff's progressive arthritis argument is meritless because showing that an impairment became disabling after the expiration of a claimant's insured status is insufficient to establish eligibility for DIB.[3] Doc. 19 at 16.

---

[3] Defendant also addresses whether the Appeals Council properly denied review, Doc. 19 at 17-19, but the undersigned does not read Plaintiff's brief to raise that argument.  Additionally, while Plaintiff included in her brief an issue statement relating to whether the Commissioner erred in failing to sustain her burden of establishing that Plaintiff could work, Doc. 15 at 1, that argument has not been briefed and is thus abandoned.  *See Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1030

As an initial matter, the ALJ did not err in failing to reconvene the administrative hearing. At the conclusion of the initial hearing, the ALJ twice invited Plaintiff's counsel to indicate, when filing the missing medical records, whether Plaintiff wanted a supplemental hearing. Doc. 12-3 at 37. There is no suggestion in the record to reflect that counsel did so. Further, the ALJ's opinion reflects that she thoroughly reviewed and discussed only those later-submitted medical records that could have shed light on Plaintiff's condition during the relevant time frame, namely those that slightly pre-dated her alleged onset date. Doc. 12-3 at 18 (citing Exh. C23F). The other medical records post-dated Plaintiff's final DIB eligibility date by many years and were thus not relevant. *See Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990) (stating that the claimant bears the burden to show that she was disabled prior to her date last insured for DIB purposes).

While Plaintiff does not point to any specific treating source opinion that she claims was entitled to controlling weight, a review of the evidence from the relevant time period reveals that none of her treating physicians imposed any substantive functional limitations on her, let alone any that would have precluded her from performing substantial gainful activity for a 12-month period. As a general matter, Plaintiff presented to the emergency room for treatment, and her visits were for relatively mild gastrointestinal, urinary, or menopausal symptoms, for which she was quickly treated and released. Doc. 12-8 at 5-6, 8-10, 23, 26. Even those records submitted to the Appeals Council do not warrant a different result as they similarly reflect Plaintiff's occasional bouts of quickly treated abdominal pain and nausea and difficulty with urination. Doc. 12-13 at 8, 11, 14-16, 18.

---

(5th Cir. Unit B 1982) (holding that failure to brief an issue is grounds for finding that the issue has been abandoned).

Additionally, despite arguing that she has demonstrated an entitlement to DIB based on her arthritis, during the relevant time frame, Plaintiff exhibited a normal range of motion in her extremities and reported that she was taking no prescription medications.  Doc. 12-13 at 4, 15-16, 18.  Cervical spine imaging revealed no collapse, compression, fracture or acute injury although there was mild bone spurring.  Doc. 12-14 at 9.  Imaging of Plaintiff's hands revealed no visible problems in the right hand and while the left hand did show degenerative changes, Doc. 12-14 at 10-11, Plaintiff's complaint at the administrative hearing was that the arthritis interfered with her walking during the relevant time frame, not with her hand movements, Doc. 12-3 at 35.  For these same reasons, Plaintiff's contention that her arthritis was progressive in nature such that she has demonstrated that she was disabled during the relevant time frame must also fail.  In particular, there is no ambiguity on this record suggesting that Plaintiff was disabled by her arthritis during the time period from January 2003 through September 2005.  *Cf. Spellman v. Shalala*, 1 F.3d 357, 362-63 (5th Cir. 1993) (holding that, in a case involving slowly progressive impairments, when the medical evidence regarding the onset date of disability is ambiguous and the Secretary must infer the onset date, the inference must be based on an informed judgment, and the Secretary cannot make such an inference without the assistance of a medical advisor).

**[NOTHING FURTHER ON THIS PAGE]**

## IV.  CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 14, be **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 18, be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

**SO RECOMMENDED** on February 10, 2015.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996)*.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

11